**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| GREGORY F. MULLALLY, | 2:05-cv-00154-BES-GWF |
| Plaintiff, | |
| v. | ORDER |
| DANIEL A. JONES; DON W. JONES, et al., | |
| Defendants. | |

Presently before this Court is a Motion to Dismiss for Lack of Personal Jurisdiction (#110) filed by Defendants KDMS International, LLC ("KDMS") and RealTime Gaming Holding Company, LLC ("RealTime") on June 30, 2006. The Court has also considered a Motion to Dismiss for Lack of Personal Jurisdiction (#113) filed by Boss Media, AB ("Boss Media") on July 7, 2006. On July 25, 2006 Plaintiff filed a Consolidated Opposition (#128) to both motions. Defendants filed a combined Reply (#139) on August 10, 2006.

## I. BACKGROUND

Plaintiff, an individual residing in Arizona, brought this action for patent infringement and declaratory relief against twenty-one defendants, including KDMS and its holding company, RealTime, (collectively referred to herein as the "RealTime Defendants"), and Boss Media. Plaintiff's action centers on the allegation that he owns the exclusive Internet rights to two casino games, "Caribbean Stud Poker" and "21 Superbucks" (the "Intellectual Property"), which are allegedly covered by one or more of eleven patents. Plaintiff allegedly obtained these rights pursuant to a June 8, 1998 agreement between Plaintiff and Defendant Daniel Jones. According to Plaintiff, Daniel Jones and his son, Defendant Don Jones, thereafter

began selling additional licenses to use the Caribbean Stud game on the Internet, through Defendant Games Marketing Limited ("GML") and with assistance from Defendants Mikohn Gaming Corp. ("Mikohn"), Progressive Games, Inc. ("PGI") and Gametek, LLC ("Gametek").

Through a series of purported assignment transactions occurring during the Summer of 2000, the Jones Defendants, Gametek and GML allegedly sold several non-exclusive licenses to use the Carribean Stud game on the Internet. These non-exclusive licenses were sold to the so-called Licensee Defendants named in this lawsuit, including the RealTime Defendants and Boss Media.[1] In turn, the RealTime Defendants and Boss Media have sub-licensed rights to the Carribean Stud game to their foreign customers and clients.

## A.    Jurisdictional Facts Related to RealTime Defendants

The jurisdictional facts related to the RealTime Defendants are as follows.[2]  Both Defendants are organized under the laws of Georgia (KDMS is also organized under the laws of Delaware) and have their principal places of business in Atlanta, Georgia.  KDMS conducts development, production, marketing and license sales of systems for digitally distributed gaming entertainment operators.  All of KDMS' sixty-nine employees work in Atlanta, Georgia. As the holding company for KDMS, RealTime conducts no ongoing business operations and has no employees or customers.

On or about October 22, 2001, KDMS entered into a licensing agreement with Defendant GML, a corporation organized under the laws of Ireland and having places of business in Ireland and Kentucky, for rights to the Caribbean Stud Poker game.  The agreement is governed by the laws of the State of New York.  An amendment to the agreement was entered into on May 5, 2006, whereby all rights in the original agreement were assigned to Defendant Progressive Games Partners, LLC ("PGP"), a limited liability company organized under the laws of the Isle of Man.  The laws of England and Wales govern the terms

---

[1] Plaintiff believes that the Licensee Defendants purchased their licenses without actual knowledge of Plaintiff's alleged exclusive rights to the Intellectual Property.

[2] In support of their Motion to Dismiss, the RealTime Defendants have proffered declarations from Michael Staw, the manager of RealTime, and Michael McMain, chief executive officer of KDMS.

2

1  of the May 5, 2006 agreement.  KDMS states that it does not make its gaming products
2  available anywhere in the United States because online gaming is generally prohibited in the
3  United States.  Accordingly, KDMS' sole licensee, Montana Overseas, S.A., is a Panamanian
4  company which conducts its operations from Costa Rica.  Montana Overseas pays KDMS a
5  royalty for the right to sub-license KDMS' software to third-parties, but none of these sub-
6  licensees are located in the United States.

7  The RealTime Defendants have never designed, manufactured or distributed software
8  in Nevada.  Additionally, these Defendants have never maintained any offices, mailing
9  addresses, telephone listings, bank accounts, or other tangible personal or real property in
10 Nevada, and they have never paid taxes in Nevada.  KDMS employees and owners of
11 RealTime have traveled to Nevada occasionally to participate in the G2E gaming trade show,
12 but these visits were unrelated to the licenses at issue in this case.

13 **B.    Jurisdictional Facts Related to Boss Media**

14 The jurisdictional facts related to Boss Media are as follows.[3]  Boss Media is a
15 corporation organized under the laws of Sweden, with its principal place of business in Vaxjo,
16 Sweden.  Like the RealTime Defendants, Boss conducts development, production, marketing,
17 and license sales of systems for digitally distributed gaming entertainment operators.  All of
18 Boss Media's 220 employees work in Sweden and England.

19 On or about August 5, 2005, Boss Media entered into a licensing agreement with GML,
20 a corporation organized under the laws of Ireland and having places of business in Ireland and
21 Kentucky, for rights to Internet games, including Caribbean Stud Poker.  The agreement is
22 governed by the laws of the United Kingdom.  An amendment to the agreement was entered
23 into on April 21, 2006, whereby all rights in the original agreement were assigned to PGP, a
24 limited liability company organized under the laws of the Isle of Man.  The laws of England and
25 Wales govern the terms of the April 21, 2006 agreement.

26 Boss Media has never designed, manufactured or distributed software in Nevada and

---

[3] In support of its Motion to Dismiss, Boss Media has proffered a declaration from Johan Berg, the Chief Executive Officer of Boss Media.

has not sold any licenses or other products to any entity in Nevada. Additionally, Boss Media states that it does not make its products available anywhere in the United States because online gaming is generally prohibited in the United States. Accordingly, of its approximately forty customers who license its software, none are located in the United States. Boss Media never maintained any offices, mailing addresses, telephone listings, bank accounts or other tangible personal or real property in Nevada, and has never paid taxes in Nevada. Boss Media employees have traveled to Nevada occasionally to participate in the G2E gaming trade show.

On May 8, 2006 Plaintiff filed his Amended Complaint (#69), in which the following claims are asserted: (1) breach of contract; (2) unjust enrichment; (3) conversion; (4) civil conspiracy; and (5) patent infringement, in violation of 35 U.S.C. §§ 271, 281, 283, and 284. Plaintiff also seeks declaratory relief, an injunction, and the imposition of a constructive trust over the Intellectual Property.

## II. ANALYSIS

Boss Media and the RealTime Defendants move for dismissal pursuant to FRCP 12(b)(2) for lack of personal jurisdiction. As an initial matter, the Court notes that Federal Circuit, rather than Ninth Circuit, law must be applied to determine whether a court has personal jurisdiction over an out-of-state defendant accused of patent infringement. See Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc., 444 F.3d 1356, 1361 (Fed. Cir. 2006) ("the issue of personal jurisdiction in a declaratory action for non-infringement is 'intimately related to patent law' and thus governed by Federal Circuit law regarding due process."); see also Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found., 297 F.3d 1343, 1348 (Fed. Cir. 2002). Where, as here, disposition of the personal jurisdictional question is based on affidavits and other written materials, the plaintiff need only make a prima facie showing that the defendants are subject to personal jurisdiction. Trintec Industries, Inc. v. Pedre Promotional Products, Inc., 395 F.3d 1275, 1282 (Fed. Cir. 2005). The district court must construe all pleadings and affidavits in the light most favorable to the plaintiff. Trintec Industries, 395 F.3d at 1282-83. Where a district court concludes that the existing record is

4

insufficient to support personal jurisdiction and the plaintiff demonstrates that it can supplement its jurisdictional allegations through discovery, the plaintiff is entitled to jurisdictional discovery. Id.

"Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process." Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1359 (Fed. Cir. 2001). Because Nevada's long-arm statute is coextensive with the due process principles of the United States Constitution, the two inquiries collapse into a single inquiry as to whether jurisdiction comports with due process. Inamed, 249 F.3d at 1360; see also N.R.S. § 14.065.

A court may exercise personal jurisdiction over a defendant where the defendant has "minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). These minimum contacts can give rise to either general or specific jurisdiction. LSI Industries, Inc. v. Hubbell Lighting, Inc., 232 F.3d 1369, 1375 (Fed. Cir. 2000). General jurisdiction exists where a defendant maintains "continuous and systematic" ties with the forum state, even if those ties are unrelated to the cause of action. Id. (citing Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984)). Specific jurisdiction exists where the claims "arise out of" or "relate to" the contacts with the forum, even if those contacts are "isolated or sporadic." Id.

**A.   Jurisdiction Over KDMS**

In his Consolidated Opposition (#128), Plaintiff does not present any specific argument to establish that KDMS' has minimum contacts with Nevada to give rise to an exercise of general or specific jurisdiction over this Defendant. Plaintiff merely points out that "RealTime Gaming is the holding company of KDMS, LLC," presumably in an effort to impute RealTime's contacts to KDMS for jurisdictional purposes. However, it is well-established that a parent-subsidiary relationship alone is insufficient to attribute the contacts of one entity to the other - both business entities must be regarded separately for jurisdictional purposes. See Harris

5

Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1134 (9th Cir. 2003).

Because it is undisputed that KDMS has no contacts with Nevada and RealTime's contacts, if any, may not be imputed to KDMS, the Court concludes that it lacks personal jurisdiction over KDMS.

**B.      Minimum Contacts Through an Internet Website**

Plaintiff maintains that sufficient minimum contacts with Nevada exist to establish personal jurisdiction, primarily on the basis that Boss Media and RealTime maintain "highly interactive" websites that are accessible by Nevada residents. RealTime maintains an Internet website at "http://www.realtimegaming.com." RealTime's website contains two interactive elements: (1) the ability to e-mail the company and other affiliate companies with questions about licensing and other general corporate inquiries; and (2) the ability to access the websites of forty of RealTime's client casinos through Internet hyperlinks contained in a "Client" menu on the homepage. However, RealTime does not provide online gaming on its own website and does not sell any products from its website.

Boss Media maintains a website at "http://www.bossmedia.com." Boss Media's website also contains two interactive elements: (1) the ability to fill out a form online to request to be contacted by a sales representative of Boss Media; and (2) the ability to access the websites of thirty of Boss Media's customers through Internet hyperlinks contained in a "Customer" menu on the homepage. However, Boss Media does not provide online gaming on its own website and does not sell any products from its website.

The Federal Circuit has not yet set forth extensive guidance on the issue of Internet activity as a basis for jurisdiction. Left without controlling authority from the Federal Circuit on this issue, and because the Ninth Circuit has developed a substantial body of law in this area, the Court finds the Ninth Circuit's approach very persuasive.

The Ninth Circuit applies a "sliding scale" approach to jurisdiction arising from a defendant's website. See Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 415 (9th Cir. 1997). Under the sliding scale approach, "the likelihood of personal jurisdiction [that] can be constitutionally exercised is directly proportionate to the nature and quality of commercial

6

activity that an entity conducts over the Internet." <u>Cybersell</u>, 130 F.3d at 415 (citation omitted). Thus, at one end of this sliding scale, the defendant conducts business transactions over the Internet with residents of the forum and jurisdiction is almost always proper in this situation. <u>Id.</u> At the other end of the scale are "passive" websites, through which the defendant simply posts information to those who access the site, such as advertisements and informational pieces about he website host. <u>Id.</u> In the middle of the sliding scale are so-called "interactive" websites that allow the user to exchange information with the defendant's host site. <u>Id.</u> In these cases, the court must examine "the level of interactivity and commercial nature of the exchange of information that occurs on the website" to determine if the defendant has purposely availed itself of the forum. <u>Id.</u>

**C.    General Jurisdiction**

General personal jurisdiction "requires that the defendant have 'continuous and systematic' contacts with the forum state and confers personal jurisdiction even when the cause of action has no relationship with those contacts." <u>Silent Drive, Inc. v. Strong Industries, Inc.</u>, 326 F.3d 1194, 1200 (Fed. Cir. 2003) (quoting <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414-16 (1984)).

It is undisputed that the business operations of Boss Media and RealTime are located in Sweden and Georgia, respectively. Further, there is no dispute that these Defendants maintain no physical presence whatsoever in the state of Nevada. The Defendants are not registered to conduct business in Nevada and have no registered agents, employees or sales representative located in Nevada. The only possible "contacts" these Defendants have had with Nevada include a few visits to a gaming convention by employees and owners. However, these tenuous connections between Defendants and the state do not "approximate physical presence." <u>See</u> <u>Helicopteros</u>, 466 U.S. at 411–18 (holding that the defendant's purchase of helicopters, parts, and accessories from a Texas corporation and the defendant's practice of sending employees to Texas for training and consultation were insufficient to subject it to general jurisdiction in Texas).

///

According to Plaintiff, the maintenance of "highly interactive" websites may provide a basis for general jurisdiction. However, the interactive nature of Defendants' websites does not automatically lead to the conclusion that general personal jurisdiction is proper. Plaintiff must also show that the interactivity resulted in substantial and systematic contacts with the forum state. See, e.g., Revell v. Lidov, 317 F.3d 467, 471-72 (5th Cir. 2002) (finding no general jurisdiction over nonresident defendant, despite fact that defendant's website allowed users to subscribe to a journalism review, purchase advertising, and submit electronic admissions applications, because the cited contacts with the forum were not substantial); see also Home Gambling Network, Inc. v. Betinternet.com, PLC, 2006 WL 1795554 at *4 (D. Nev. June 26, 2006) (question of general jurisdiction was "not even close" in case involving non-resident defendant maintaining interactive website that allowed a bet to placed online from Nevada, because defendant had "none of the continuous and systematic contacts with Nevada that show a substantial pattern of business relations conferring general jurisdiction").

Given that individuals can access an Internet website from any forum, an exercise of general jurisdiction based solely on an interactive website would subject many companies and individuals to suit in essentially any court, which is untenable. There must be evidence to show that the website was systematically and continuously aimed at the forum such that an exercise of jurisdiction would comport with "traditional notions of fair play and substantial justice." Absent such evidence, this Court does not have general personal jurisdiction on the basis of Defendants' interactive websites. See Cybersell, Inc., 130 F.3d at 419-20 (maintaining a website accessible to anyone over the Internet is not enough to establish jurisdiction). Accordingly, the Court finds that Boss Media's and RealTime's contacts with the District of Nevada are insufficient to support an exercise of general personal jurisdiction over these Defendants.

**D.    Specific Jurisdiction**

The Federal Circuit applies a three-part test to determine whether a defendant's activities are sufficiently related to the forum state to establish specific jurisdiction:

8

      (1) whether the defendant purposefully directed its activities at residents of the forum;

      (2) whether the claims arise out of or relate to those forum-related activities; and

      (3) whether the exercise of personal jurisdiction would be reasonable and fair.

See Akro Corp. v. Luker, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995), cert. denied, 515 U.S. 1122 (1995). Once a plaintiff has shown sufficient minimum contacts to satisfy the first two factors, defendants must prove that the exercise of jurisdiction is unreasonable. Electronics for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1350 (Fed. Cir. 2003), cert. denied, 540 U.S. 1111 (2004). Applying these principles, the Court now determines whether it may exercise specific jurisdiction over the moving Defendants.

      Plaintiff maintains that Boss Media and RealTime have purposefully directed their activities at Nevada residents through their "highly interactive" websites, which are accessible to Nevada residents and anyone else in the world. Predictably, Plaintiff relies primarily upon the analysis set forth in Maritz, Inc. v. Cybergold, Inc., 947 F. Supp. 1328 (E.D. Mo. 1996), which is a case often cited for the proposition that an interactive website is enough to establish jurisdiction despite a lack of evidence of any actual transactions with forum residents. However, case law that has developed in this area since Maritz, including the Ninth Circuit's Cybersell decision, rejects the broad view of jurisdiction that Plaintiff propounds. See, e.g., Millennium Enterprises, Inc. v. Millennium Music, LP, 33 F. Supp.2d 907, 921 (D. Or. 1999) (finding that Maritz lacks the principle that a defendant must "purposefully direct" its activities at or take "deliberate action" in or create "substantial connection" with the forum state so as to provide "fair warning" that such activities may subject defendant to jurisdiction in a distant forum).

      Maintaining a website accessible to anyone, as Defendants allegedly did in this case, is not enough to show that Defendants expressly aimed their acts at the forum state. As explained in Cybersell, there must be "something more" than the mere existence of a website

9

that is visible in a forum to confer jurisdiction over the site's owner. Id. at 418; see also Trintec Industries, 395 F.3d at 1281 ("[T]he ability of District residents to access the defendant's website . . . does not by itself show any persistent course of conduct by defendant in the District"). Here, the "something more" is not present. Plaintiff does not allege that Defendants have intentionally targeted Nevada residents with the intent or knowledge of harming Plaintiff through their websites. Defendants have not encouraged Nevada residents to access their websites, and Defendants state that no part of their business was achieved in Nevada. Defendants merely maintain websites that allow users to obtain information about their companies and products, thus rendering it foreseeable that residents of Nevada, or any other state or country, could access the websites. However, it is well-established that foreseeability alone cannot serve as the constitutional benchmark for personal jurisdiction. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) ("[t]he foreseeability that is critical to due process analysis is . . . that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there"). The fact that Defendants' websites have links to other websites where visitors may engage in online gambling is also not helpful because the activity of those hyperlinked websites supports jurisdiction only if Defendants maintain some responsibility for or control over the activities and contents of these third-party gaming sites. See Trintec Indus., 395 F.3d at 1281 (citing Jung v. Ass'n of Am. Med. Colls., 300 F. Supp.2d 119, 132 n.5 (D.D.C. 2004) (distinguishing cases where personal jurisdiction is based upon defendant's activities on its own website from situation where third party's website was used)).

Accepting all of Plaintiff's contentions as true, Defendants could not reasonably anticipate being haled into court in Nevada based on their operation of websites accessible in Nevada. To exercise jurisdiction over Defendants under these circumstances would run afoul of the requirement that "[m]inimum contacts must be 'purposeful' contacts in order to 'ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-74 (1985).

///

Plaintiff has failed to satisfy the first prong of the Federal circuit's three-part test for specific jurisdiction. Thus, it is not necessary to analyze the second and third prongs of the test.

### E. Plaintiff's Request for Jurisdictional Discovery

In his Opposition, Plaintiff requests that he be permitted to conduct jurisdictional discovery because "dismissal is premature and inappropriate." (Opp. (#128), p. 12). Because Plaintiff has failed to make a prima facie showing of personal jurisdiction, the Court must consider his request for jurisdictional discovery. See Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp., 395 F.3d 1315, 1323 (Fed. Cir. 2005) (finding that plaintiff in patent infringement suit had preserved discovery request by raising it in response to motion to dismiss for lack of personal jurisdiction). "Such discovery is appropriate where the existing record is 'inadequate' to support personal jurisdiction and a party demonstrates that it can supplement its jurisdictional allegations through discovery." Trintec, 395 F.3d at 1283.

Plaintiff laments that "[d]efendants are newly named defendants in this lawsuit, and as such there has been no discovery conducted into the nature of Defendants' business." (Opp. (#128), p. 11). However, Plaintiff has only generally requested such discovery, without explaining how such discovery would bolster its contentions, and Plaintiff has not persuaded the Court that such discovery is warranted in this case. Thus, Plaintiff's request for jurisdictional discovery is denied.

### III.  CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that the Motion to Dismiss for Lack of Personal Jurisdiction (#110) filed by Defendants KDMS and RealTime is GRANTED.

IT IS FURTHER ORDERED that the Motion to Dismiss for Lack of Personal Jurisdiction (#113) filed by Boss Media is GRANTED.

DATED: This 28th day of February, 2007.

_____
United States District Judge