**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| GREGORY F. MULLALLY, | ) | 2:05-cv-00154-BES-GWF |
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| DANIEL A. JONES; DON W. JONES, et al., | ) | |
| Defendants. | ) | |

Presently before this Court is a Motion to Dismiss for Lack of Personal Jurisdiction (#140) filed by Defendant WagerLogic (UK) Limited ("WagerLogic") on August 14, 2006. On August 30, 2006 Plaintiff filed an Opposition (#145) and WagerLogic filed its Reply (#149) on September 14, 2006. The Court has also considered the Motion to Dismiss for Lack of Personal Jurisdiction (#157) filed by Defendant Wagerlogic Limited on December 22, 2006. Plaintiff filed an Opposition (#159) to this Motion and Wagerlogic Limited filed a Reply (#160).

**I. BACKGROUND**

Plaintiff, an individual residing in Arizona, brought this action for patent infringement and declaratory relief against twenty-one defendants, including WagerLogic and Wagerlogic Limited. Plaintiff's action centers on the allegation that he owns the exclusive Internet rights to two casino games, "Caribbean Stud Poker" and "21 Superbucks" (the "Intellectual Property"), which are allegedly covered by one or more of eleven patents. Plaintiff allegedly obtained these rights pursuant to a June 8, 1998 agreement between himself and Defendant Daniel Jones. According to Plaintiff, Daniel Jones and his son, Defendant Don Jones, thereafter began selling additional licenses to use the Caribbean Stud game on the Internet,

through Defendant Games Marketing Limited ("GML") and with assistance from Defendants Mikohn Gaming Corp. ("Mikohn"), Progressive Games, Inc. ("PGI") and Gametek, LLC ("Gametek"). Through a series of purported assignment transactions occurring during the Summer of 2000, the Jones Defendants, Gametek and GML allegedly sold several non-exclusive licenses to use the Carribean Stud game on the Internet. These non-exclusive licenses were allegedly sold to the so-called Licensee Defendants named in this lawsuit, including WagerLogic and Wagerlogic Limited.[1]

On May 8, 2006 Plaintiff filed an Amended Complaint (#69), in which he alleges patent infringement and declaratory relief against WagerLogic and Wagerlogic Limited, as well as the nineteen other Defendants. WagerLogic and Wagerlogic Limited move for dismissal from this action pursuant to FRCP 12(b)(2) for lack of personal jurisdiction.

**A.    Jurisdictional Facts Related to WagerLogic**

In support of its Motion to Dismiss (#140), WagerLogic has proffered a Declaration and Supplemental Declaration of Robert Stikeman, the Director of WagerLogic. These declarations establish the following jurisdictional facts. WagerLogic is organized under the laws of the United Kingdom, with its principal place of business in London, England. WagerLogic's principal business is to act as a liaison to the licensees of Wagerlogic Limited, which is a Cyprus corporation. Wagerlogic Limited is WagerLogic's sole customer.

WagerLogic's three employees work in the United Kingdom. WagerLogic has never designed, manufactured or distributed software in Nevada, has never conducted business in Nevada, and has never sold any licenses or other products in Nevada. Additionally, WagerLogic has never maintained any offices, mailing addresses, telephone listings, bank accounts, or other tangible personal or real property in Nevada, and it has never paid taxes in Nevada.

**B.    Jurisdictional Facts Related to Wagerlogic Limited**

In support of its Motion to Dismiss (#157), Wagerlogic Limited has proffered a

---

[1] Plaintiff believes that the Licensee Defendants purchased their licenses without actual knowledge of Plaintiff's alleged exclusive rights to the Intellectual Property.

2

Declaration of Antony Demetriades, the General Manager of Wagerlogic Limited. This declaration establishes the following jurisdictional facts. Wagerlogic Limited is a Cyprus corporation, with its principal place of business in Nicosia, Cyprus. Plaintiff proffers evidence showing that Wagerlogic Limited is the wholly-owned subsidiary of Defendant Cryptologic, a Canadian corporation named in this lawsuit. Wagerlogic Limited conducts development, production, marketing, and license sales of systems for digitally distributed gaming entertainment operators. All of Wagerlogic Limited's approximately 100 employees work in Cyprus.

On or about June 1, 2001, Wagerlogic Limited entered into a licensing agreement with Games Marketing, an English joint venture, for rights to Internet wagering games, including Caribbean Stud Poker. The agreement is governed by the laws of the State of Kentucky. An amendment to the agreement was entered into in March of 2006, whereby all rights in the original agreement were assigned to PGP, a limited liability company organized under the laws of the Isle of Man. The laws of England and Wales govern the terms of the March 2006 agreement.

Wagerlogic Limited has never designed, manufactured or distributed software in Nevada and has not sold any licenses or other products to any entity in Nevada. Additionally, Wagerlogic Limited states that it does not make its products available anywhere in the United States because online gaming is generally prohibited in the United States. Accordingly, of its approximately ten customers who license its software, none are located in the United States. Wagerlogic Limited never maintained any offices, mailing addresses, telephone listings, bank accounts or other tangible personal or real property in Nevada, and has never paid taxes in Nevada. A couple of Wagerlogic Limited employees have traveled to Nevada occasionally to participate in the G2E gaming trade show.

## II. ANALYSIS

As an initial matter, the Court notes that Federal Circuit, rather than Ninth Circuit, law must be applied to determine whether a court has personal jurisdiction over an out-of-state defendant accused of patent infringement. See Breckenridge Pharmaceutical, Inc. v.

1  Metabolite Laboratories, Inc., 444 F.3d 1356, 1361 (Fed. Cir. 2006) ("the issue of personal
2  jurisdiction in a declaratory action for non-infringement is 'intimately related to patent law' and
3  thus governed by Federal Circuit law regarding due process."); see also Deprenyl Animal
4  Health, Inc. v. Univ. of Toronto Innovations Found., 297 F.3d 1343, 1348 (Fed. Cir. 2002).
5  Where, as here, disposition of the personal jurisdictional question is based on affidavits and
6  other written materials, the plaintiff need only make a prima facie showing that the defendants
7  are subject to personal jurisdiction. Trintec Industries, Inc. v. Pedre Promotional Products,
8  Inc., 395 F.3d 1275, 1282 (Fed. Cir. 2005). The district court must construe all pleadings and
9  affidavits in the light most favorable to the plaintiff. Trintec Industries, 395 F.3d at 1282-83.
10 Where a district court concludes that the existing record is insufficient to support personal
11 jurisdiction and the plaintiff demonstrates that it can supplement its jurisdictional allegations
12 through discovery, the plaintiff is entitled to jurisdictional discovery. Id.

13      "Determining whether personal jurisdiction exists over an out-of-state defendant
14 involves two inquiries: whether a forum state's long-arm statute permits service of process,
15 and whether the assertion of personal jurisdiction would violate due process." Inamed Corp.
16 v. Kuzmak, 249 F.3d 1356, 1359 (Fed. Cir. 2001). Because Nevada's long-arm statute is
17 coextensive with the due process principles of the United States Constitution, the two inquiries
18 collapse into a single inquiry as to whether jurisdiction comports with due process. Inamed,
19 249 F.3d at 1360; see also N.R.S. § 14.065.

20      A court may exercise personal jurisdiction over a defendant where the defendant has
21 "minimum contacts" with the forum "such that the maintenance of the suit does not offend
22 traditional notions of fair play and substantial justice." International Shoe Co. v. Washington,
23 326 U.S. 310, 316 (1945). These minimum contacts can give rise to either general or specific
24 jurisdiction. LSI Industries, Inc. v. Hubbell Lighting, Inc., 232 F.3d 1369, 1375 (Fed. Cir. 2000).
25 General jurisdiction exists where a defendant maintains "continuous and systematic" ties with
26 the forum state, even if those ties are unrelated to the cause of action. Id. (citing Helicopteros
27 Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984)). Specific jurisdiction
28 ///

exists where the claims "arise out of" or "relate to" the contacts with the forum, even if those contacts are "isolated or sporadic." Id.

### A. Minimum Contacts Through an Internet Website

Plaintiff maintains that sufficient minimum contacts with Nevada exist to establish personal jurisdiction over WagerLogic and Wagerlogic Limited, primarily on the basis that one or both of these Defendants maintain an interactive website at "wagerlogic.com," which is available to Nevada residents. (Opp. (#145), pp. 7-8, Opp. (#159), pp. 6-7). The "wagerlogic.com" website contains two interactive elements: (1) the ability to contact the company for information on egaming products and services; and (2) the ability to access the websites of fifteen client casinos through Internet hyperlinks contained in a "Client" menu on the homepage. However, online gaming is not available directly on the "wagerlogic.com" website and products or services are not sold on the website.

WagerLogic denies that it owns, operates, or maintains any website. (Reply (#149), Supp. Dec. of Robert Stikeman, ¶ 4). WagerLogic explains that "wagerlogic.com" is owned, operated and maintained by a separate corporate entity that is not owned or controlled by WagerLogic. Id. WagerLogic nevertheless argues that, even if it could be charged with operating the "wagerlogic.com" website or some similar website, the type of Internet conduct alleged by Plaintiff does not create a basis for personal jurisdiction over WagerLogic. In its Reply, Wagerlogic Limited admits that it operates the "wagerlogic.com" website, but denies that the website creates a basis for personal jurisdiction.

The Federal Circuit has not yet set forth extensive guidance on the issue of Internet activity as a basis for jurisdiction. Left without controlling authority from the Federal Circuit on this issue, and because the Ninth Circuit has developed a substantial body of law in this area, the Court finds the Ninth Circuit's approach very persuasive. The Ninth Circuit applies a "sliding scale" approach to jurisdiction arising from a defendant's website. See Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 415 (9th Cir. 1997). Under the sliding scale approach, "the likelihood of personal jurisdiction [that] can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the

Internet." Cybersell, 130 F.3d at 415 (citation omitted). Thus, at one end of this sliding scale, the defendant conducts business transactions over the Internet with residents of the forum and jurisdiction is almost always proper in this situation. Id. At the other end of the scale are "passive" websites, through which the defendant simply posts information to those who access the site, such as advertisements and informational pieces about he website host. Id. In the middle of the sliding scale are so-called "interactive" websites that allow the user to exchange information with the defendant's host site. Id. In these cases, the court must examine "the level of interactivity and commercial nature of the exchange of information that occurs on the website" to determine if the defendant has purposely availed itself of the forum. Id.

**B.    General Jurisdiction**

General personal jurisdiction "requires that the defendant have 'continuous and systematic' contacts with the forum state and confers personal jurisdiction even when the cause of action has no relationship with those contacts." Silent Drive, Inc. v. Strong Industries, Inc., 326 F.3d 1194, 1200 (Fed. Cir. 2003) (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984)).

Plaintiff concedes that Wagerlogic Limited's contacts with Nevada are insufficient to support a finding of general jurisdiction. (Opp. (#159). With respect to WagerLogic, it is undisputed that this Defendant's business operations are located in the United Kingdom and Defendant maintains no physical presence whatsoever in the State of Nevada. WagerLogic is also not registered to conduct business in Nevada and has no registered agents, employees or sales representative located in Nevada.

According to Plaintiff, the maintenance of a "highly interactive" website may provide a basis for general jurisdiction. However, the interactive nature of a website does not automatically lead to the conclusion that general personal jurisdiction is proper. Plaintiff must also show that the interactivity resulted in substantial and systematic contacts with the forum state. See, e.g., Revell v. Lidov, 317 F.3d 467, 471-72 (5th Cir. 2002) (finding no general jurisdiction over nonresident defendant, despite fact that defendant's website allowed users to subscribe to a journalism review, purchase advertising, and submit electronic admissions

applications, because the cited contacts with the forum were not substantial); see also Home Gambling Network, Inc. v. Betinternet.com, PLC, 2006 WL 1795554 at *4 (D. Nev. June 26, 2006) (question of general jurisdiction was "not even close" in case involving non-resident defendant maintaining interactive website that allowed a bet to placed online from Nevada, because defendant had "none of the continuous and systematic contacts with Nevada that show a substantial pattern of business relations conferring general jurisdiction").

Given that individuals can access an Internet website from any forum, an exercise of general jurisdiction based solely on an interactive website would subject many companies and individuals to suit in essentially any court, which is untenable. There must be evidence to show that the website was systematically and continuously aimed at the forum such that an exercise of jurisdiction would comport with "traditional notions of fair play and substantial justice." Absent such evidence, this Court does not have general personal jurisdiction on the basis of any website that may be attributable to WagerLogic. See Cybersell, Inc., 130 F.3d at 419-20 (maintaining a website accessible to anyone over the Internet is not enough to establish jurisdiction). Accordingly, the Court finds that it may not exercise general personal jurisdiction over WagerLogic and Wagerlogic Limited.

**C.   Specific Jurisdiction**

The Federal Circuit applies a three-part test to determine whether a defendant's activities are sufficiently related to the forum state to establish specific jurisdiction:

(1) whether the defendant purposefully directed its activities at residents of the forum;

(2) whether the claims arise out of or relate to those forum-related activities; and

(3) whether the exercise of personal jurisdiction would be reasonable and fair.

See Akro Corp. v. Luker, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995), cert. denied, 515 U.S. 1122 (1995). Once a plaintiff has shown sufficient minimum contacts to satisfy the first two factors, defendants must prove that the exercise of jurisdiction is unreasonable. Electronics for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1350 (Fed. Cir. 2003), cert. denied, 540 U.S. 1111

7

(2004). Applying these principles, the Court now determines whether it may exercise specific jurisdiction over the moving Defendants.

Plaintiff maintains that WagerLogic and Wagerlogic Limited have purposefully directed their activities at Nevada residents through the "highly interactive" website, "wagerlogic.com", which is purportedly accessible to Nevada residents and anyone else in the world. Predictably, Plaintiff relies primarily upon the analysis set forth in <u>Maritz, Inc. v. Cybergold, Inc.</u>, 947 F. Supp. 1328 (E.D. Mo. 1996), which is a case often cited for the proposition that an interactive website is enough to establish jurisdiction despite a lack of evidence of any actual transactions with forum residents. However, case law that has developed in this area since <u>Maritz</u>, including the Ninth Circuit's <u>Cybersell</u> decision, rejects the broad view of jurisdiction that Plaintiff propounds. <u>See, e.g.</u>, <u>Millennium Enterprises, Inc. v. Millennium Music, LP</u>, 33 F. Supp.2d 907, 921 (D. Or. 1999) (finding that <u>Maritz</u> lacks the principle that a defendant must "purposefully direct" its activities at or take "deliberate action" in or create "substantial connection" with the forum state so as to provide "fair warning" that such activities may subject defendant to jurisdiction in a distant forum).

Maintaining a website accessible to anyone, as Defendants allegedly did in this case, is not enough to show that Defendants expressly aimed their acts at the forum state. As explained in <u>Cybersell</u>, there must be "something more" than the mere existence of a website that is visible in a forum to confer jurisdiction over the site's owner. <u>Id.</u> at 418; <u>see also</u> <u>Trintec Industries</u>, 395 F.3d at 1281 ("[T]he ability of District residents to access the defendant's website . . . does not by itself show any persistent course of conduct by defendant in the District"). Here, the "something more" is not present. Plaintiff does not allege that Defendants have intentionally targeted Nevada residents with the intent or knowledge of harming Plaintiff through a website. Defendants have not encouraged Nevada residents to access "wagerlogic.com", and Defendants state that no part of their business was achieved in Nevada. "Wagerlogic.com" merely allows users to obtain information about WagerLogic Limited, thus rendering it foreseeable that residents of Nevada, or any other state or country, could access the website. However, it is well-established that foreseeability alone cannot

serve as the constitutional benchmark for personal jurisdiction.  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) ("[t]he foreseeability that is critical to due process analysis is . . . that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there").

In an effort to create additional minimum contacts between Wagerlogic Limited and Nevada, Plaintiff relies heavily upon the alleged conduct of Wagerlogic Limited's licensees/clients. (Opp. (#159), p. 7). Plaintiff points out that the "wagerlogic.com" website contains links to Wagerlogic Limited's licensees/clients, which are online casinos that offer Internet-based gambling. According to Plaintiff, jurisdiction over Wagerlogic Limited can be established because Nevada residents "presumably" make up a portion of the players who wager money on these third-party websites. (Opp. (#159), p. 9). Plaintiff also maintains that at least two of Wagerlogic Limited's licensees have user agreements that online players must accept prior to entering their online casinos, and because it is "all but certain that some of those players reside in Nevada," the Court can assume that Wagerlogic Limited maintains contractual relationships with Nevada residents. (Opp. (#159), pp. 9-10). However, these speculative "contacts" with Nevada residents are not helpful because the activity of those hyperlinked websites supports jurisdiction only if Defendants maintain some responsibility for or control over the activities and contents of the third-party gaming sites. See Trintec Indus., 395 F.3d at 1281 (citing Jung v. Ass'n of Am. Med. Colls., 300 F. Supp.2d 119, 132 n.5 (D.D.C. 2004) (distinguishing cases where personal jurisdiction is based upon defendant's activities on its own website from situation where third party's website was used)). Moreover, the Supreme Court has noted that "the foreseeabiliy that is critical to due process analysis . . . is that the *defendant's* conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (emphasis added).

Accepting all of Plaintiff's contentions as true, Defendants could not reasonably anticipate being haled into court in Nevada based on their operation of a website accessible in Nevada. To exercise jurisdiction over Defendants under these circumstances would run

afoul of the requirement that "[m]inimum contacts must be 'purposeful' contacts in order to 'ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum.'" Burger King Corp., 471 U.S. at 472-74.  Plaintiff has failed to satisfy the first prong of the Federal circuit's three-part test for specific jurisdiction.  Thus, it is not necessary to analyze the second and third prongs of the test.

**D.     Plaintiff's Request for Jurisdictional Discovery**

In his Opposition, Plaintiff requests that he be permitted to conduct jurisdictional discovery because "dismissal is premature and inappropriate." (Opp. (#145), p. 11, Opp. (#159), p. 12).  Because Plaintiff has failed to make a prima facie showing of personal jurisdiction, the Court must consider his request for jurisdictional discovery. See Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp., 395 F.3d 1315, 1323 (Fed. Cir. 2005) (finding that plaintiff in patent infringement suit had preserved discovery request by raising it in response to motion to dismiss for lack of personal jurisdiction).  "Such discovery is appropriate where the existing record is 'inadequate' to support personal jurisdiction and a party demonstrates that it can supplement its jurisdictional allegations through discovery." Trintec, 395 F.3d at 1283.

Plaintiff laments that the moving Defendants are newly named in this lawsuit, and as such there has been no discovery conducted into the nature of Defendants' business. (Opp. (#145), p. 10, Opp. (#159), p. 11).  However, Plaintiff has only generally requested such discovery, without explaining how such discovery would bolster its contentions, and Plaintiff has not persuaded the Court that such discovery is warranted in this case.  Thus, Plaintiff's request for jurisdictional discovery is denied.

///
///
///
///
///
///

## III.  CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that the Motion to Dismiss for Lack of Personal Jurisdiction (#140) filed by WagerLogic (UK) Limited is GRANTED.

IT IS FURTHER ORDERED that the Motion to Dismiss for Lack of Personal Jurisdiction (#157) filed by Defendant Wagerlogic Limited is GRANTED.

DATED: This 28th day of February, 2007.

_____

United States District Judge